UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

SHIRLEY JUNE TREPANIER,
Plaintiff,
v.
CAROLYN W. COLVIN, Acting Commissioner of Social Security,
Defendant.

Case No. CV 13-9027-DFM

MEMORANDUM OPINION AND ORDER

Plaintiff Shirley June Trepanier ("Plaintiff") appeals the decision of the Administrative Law Judge ("ALJ") denying her application for Supplemental Security Income ("SSI") benefits. The Court concludes that the ALJ offered specific and legitimate reasons for rejecting the opinion of her treating physician and that any error was harmless. Therefore, the ALJ's decision is affirmed.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed an application for SSI on August 22, 2006, alleging disability beginning July 1, 2004. Administrative Record ("AR") 9. Her

application was denied by an ALJ in a decision dated March 28, 2008, but was remanded by the Appeals Council on grounds unrelated to this appeal. AR 61-71, 73-75. Following the receipt of additional evidence, including testimony from Plaintiff, a medical expert, and a vocational expert, an ALJ found that Plaintiff had the following medically determinable impairments: atypical headaches, migrainous in nature; mild myofascial pain disorder; mild degenerative disc disease of the cervical spine; chronic iron deficiency anemia; history of vertigo; and history of gastritis. AR 11. The ALJ found that these impairments in combination were severe. AR 12. The ALJ concluded, however, that Plaintiff was not disabled because there was work available in significant numbers in the national and regional economies that she could perform. AR 17-18.

## II.

## ISSUE PRESENTED

The parties dispute whether the ALJ erred in assessing the opinion of Plaintiff's treating neurologist, Dr. Faisal Qazi. See Joint Stipulation ("JS") at 3, 12.

## III.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance.

Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

## IV.

## DISCUSSION

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for giving "little weight" to Dr. Qazi's opinion as expressed in a November 11, 2011 medical source statement. JS at 4; see AR 17.

### A. Background

Plaintiff first began suffering chronic headaches in July 2004, at which time Dr. K. Greg Tomassian appears to have been her primary-care physician. See AR 320-22, 330, 355-56. She visited a number of specialists about her headaches and related physical complaints, both through referrals from Dr. Tomassian's clinic and in connection with her application for benefits. Plaintiff also underwent repeated head and neck imaging and cerebrospinal-fluid testing from 2004 to 2011, all of which were normal. See AR 653-56 (hearing testimony of medical expert discussing testing); see, e.g., AR 281, 283, 288; 357-60; 621-22; 623-24; 631-32.

On September 10, 2004, Dr. Sergio Fuenzalida, a neurologist, reported a normal neurological exam and that the reason for Plaintiff's continued issues was unclear. AR 356.

///

On November 30, 2004, Plaintiff was first seen by Dr. Richard Hollcraft, a rheumatologist. See AR 335-38. Upon initial examination, Dr. Hollcraft detected trapezius spasm and resultant limitation in Plaintiff's cervical range of motion, but found that she was otherwise normal. AR 336-37. On November 16, 2005, Dr. Hollcraft reported that, although Plaintiff's rheumatological workup was negative, he suspected that she might be suffering from "chronic trapezius myofascitis with tension muscle headaches." AR 548. Dr. Hollcraft noted that Plaintiff refused to take any of the medication he prescribed, instead relying only on Tylenol, and that therefore "there is little I can offer." Id.

On April 28, 2005, Dr. Chan Kim, another neurologist, examined Plaintiff after a referral from Dr. Tomassian and found Plaintiff to be "mentally clear and oriented without any deficit." AR 550. Dr. Kim also noted normal test results, including a brain MRI, and opined that Plaintiff's complaints were psychosomatic. Id.

On May 10, 2007, a state-agency consultant, Dr. John Sedgh, examined Plaintiff. AR 382-86. He found that Plaintiff had reduced range of motion in her cervical spine but was otherwise normal. Id. He noted x-ray evidence of early degenerative disc disease. AR 386. He opined that Plaintiff was capable of medium work and had no postural or manipulative limitations. Id.

On July 12, 2007, another neurologist, Dr. Christine Wong, examined Plaintiff after a referral by Dr. Tomassian. AR 488-90. Upon examination, Dr. Wong found Plaintiff to be neurologically intact but noted psychomotor retardation. AR 489. Dr. Wong suspected a possible diagnosis of decreased intracranial pressure, possibly secondary to a cerebrospinal leak. Id. Dr. Wong noted pseudotumor cerebri as a possible differential diagnosis but found that inconsistent with imaging and other evidence. Id. She recommended an MRI and vision testing. AR 490. The record does not indicate whether Plaintiff followed up with Dr. Wong.

On September 20, 2008, another neurologist, Dr. James Lin, examined Plaintiff after a referral by Dr. Tomassian. AR 539. The record does not reflect his findings or recommendation.

On February 11, 2011, a state-agency consultant, Dr. Sarah Maze, performed a neurological examination of Plaintiff. AR 429-32. Dr. Maze noted that Plaintiff took Tylenol for her frequent head pain, which she described as being a "6" or "7" on a scale of 10. AR 429. Plaintiff reported that a prior doctor's concern that she had pseudotumor cerebri was never confirmed. Id. She had seen an orthopedic surgeon regarding her neck pain. Id. Dr. Maze's findings on examination were normal, with good motor strength and coordination, except for slight blurring of optic disc margins. AR 430, 431. Dr. Maze suspected possible pseudotumor cerebri and noted that Plaintiff had not sought consistent medical attention despite being insured. AR 431. Dr. Maze opined that Plaintiff was capable of medium work with no other restrictions. AR 432; see also AR 433-38. Dr. Maze noted that Plaintiff's "subjective complaints cannot be explained by objective findings on exam." AR 438.

On February 18, and April 1, and September 23, 2011, Plaintiff saw Dr. Faisal Qazi of Inland Neurological Consultants. He found Plaintiff on each visit to be grossly neurologically intact. See AR 446, 448, 451. He assessed neck pain, right greater-occipital-nerve tenderness, chronic migraine without aura, dizziness, and tinnitus. See AR 446, 448, 451-52. Although Dr. Qazi ordered diagnostic testing and requested Plaintiff's prior records, it is unclear whether he received either. See AR 447, 449, 451. He prescribed a migraine preventive (Topamax) and neuropathic pain reliever (gabapentin), but Plaintiff reported no relief from either and side effects from both. See AR 447, 448-49, 450.

In March 2012, Plaintiff provided both a typed summary of her symptoms and medical history and a form completed by or on behalf of Dr.

Qazi on November 11, 2011. AR 636-40. The form noted that Dr. Qazi had treated Plaintiff since February 2011 and had diagnosed chronic migraine without aura and neck pain. AR 638. The form noted symptoms of right greater-occipital-nerve tenderness, headache, migraines, fatigue, and epigastric distress syndrome and deemed Plaintiff's prognosis "guarded." Id. The form reported that Plaintiff could sit, stand, or walk for zero hours and never lift anything over 10 pounds in an eight-hour day. AR 638-39. The form indicated that Plaintiff required an assistive walking device and was incapable of stooping, pushing, kneeling, prolonged standing or walking, work requiring detailed tasks, repetitive fingering or handling, repetitive reaching, bending, prolonged fixed positioning of the neck, and work requiring hypervigilance. AR 639. Plaintiff was expected to be absent from work more than three times a month because of her impairments. Id.

At the March 27, 2012 hearing, medical expert Dr. David Brown testified that the evidence established impairments of myofascial pain disorder, atypical migrainous headaches, mild degenerative disc disease, anemia, history of gastritis, and history of vertigo. See AR 651-53. He opined that there was no evidence of any neuropathology that would cause Plaintiff's headaches and cranial pressure. AR 656. Dr. Brown opined that Plaintiff should be limited to light work with some additional environmental limitations. AR 657-58.

**B. Applicable Law**

Three types of physicians may offer opinions in Social Security cases: those who directly treated the plaintiff, those who examined but did not treat the plaintiff, and those who did not treat or examine the plaintiff. See 20 C.F.R. § 416.927(c)(2); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a non-examining physician. Lester, 81 F.3d at 830. Thus, when a treating

doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Id. When a treating doctor's opinion is contradicted by another doctor, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record for rejecting the treating doctor's opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Lester, 81 F.3d at 830-31. However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

**C. Analysis**

The ALJ offered the following reasons for discounting Dr. Qazi's opinion: his limited treatment of Plaintiff; the inconsistency between his opinion and the findings and opinions of her other doctors; that Dr. Qazi dated Plaintiff's symptoms to July 2004 but did not evince knowledge of her medical history predating February 2011; his inclusion of history of meningitis among Plaintiff's diagnoses; and concerns regarding the credibility of the November 2011 form. See AR 16-17. Some of these arguably were not legitimate bases for discounting Dr. Qazi's opinion. Because, however, the ALJ's analysis did include other specific, legitimate bases for according Dr. Qazi's opinion "little weight," and because the weight of evidence contrary to the statements in the November 2011 form was so great, any error did not alter the ultimate credibility determination, and was therefore harmless. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (holding that harmless error is error that does not negate validity of ALJ's ultimate credibility determination); Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006) (nonprejudicial mistakes harmless).

The ALJ noted that the record shows that Dr. Qazi saw Plaintiff only

three times and thus had a limited treatment history with Plaintiff. AR 17. Although the fact that Dr. Qazi saw Plaintiff only three times is not alone a sufficient basis to reject his opinion outright, the ALJ validly considered the length and nature of Dr. Qazi's treatment relationship with the Plaintiff in weighing his opinion. See Orn, 495 F.3d at 631 (noting that factors in assessing treating physician's opinion include length of treatment relationship, frequency of examination, and nature and extent of treatment relationship).

Dr. Qazi's limited treatment of Plaintiff is particularly noteworthy given that, as the ALJ noted, the findings in the November 2011 form find no support in and frequently contradict the findings of the other doctors who treated or examined plaintiff, including other neurologists. AR 16 ("Other than Dr. Q[a]zi, no other treating physician supports the claimant's allegation of disability and [Dr. Vee, another treating physician,] stated that there was insufficient evidence to even formulate a diagnosis."); see, e.g., AR 356 (Dr. Fuenzalida), 606 (Dr. Vee); 548 (Dr. Hollcraft); 550 (Dr. Chan); 431 (Dr. Maze). That the statements in the November 2011 form are inconsistent with the findings and opinions of several other doctors was a specific and legitimate reason to accord Dr. Qazi's opinion "little weight." See 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); Tonapetyan, 242 F.3d at 1149 (holding that contrary medical opinions based on doctors' own findings served as specific and legitimate reasons for rejecting medical opinion unsupported by objective evidence); Houghton v. Comm'r Soc. Sec. Admin., 493 F. App'x 843, 845 (9th Cir. 2012) (holding that ALJ properly discounted treating doctor's opinion in favor of other doctors' opinions that were "better supported by the evidence and more consistent with the record as a whole"); Buckner-Larkin v. Astrue, 450 F. App'x 626, 628 (9th Cir. 2011) (holding that ALJ properly discounted treating physician's opinion that "was inconsistent

with other medical evidence and opinions, including the opinions of other treating and examining physicians").

The ALJ also noted that Dr. Qazi did not indicate in the November 2011 form that he had reviewed any of Plaintiff's prior treatment records. AR 17. Although Dr. Qazi appears to have sought Plaintiff's prior records, AR 449, and possibly received some of them, see AR 448 (noting 2004 testing), it is unclear from his treatment notes or the November 2011 form whether and to what extent Dr. Qazi actually reviewed Plaintiff's prior medical history. Because it is unclear how familiar Dr. Qazi was with Plaintiff's prior treatment records, the ALJ legitimately found that Dr. Qazi's opinion could not establish limitations predating his initial visit with Plaintiff in February 2011. See Thomas, 278 F.3d at 957 (ALJ need not accept opinion inadequately supported by clinical findings).

To the extent, however, that the ALJ discounted the credibility of Dr. Qazi's assessment of Plaintiff because Dr. Qazi indicated that her limitations first began in July 2004, the ALJ likely erred. See AR 17. Even if Dr. Qazi did not review all of Plaintiff's pre-2011 medical records, he likely knew the date upon which her symptoms began because she was referred to Dr. Qazi by clinicians who had been managing her care since at least 2003. See AR 320-22, 615. The record confirms that Plaintiff first began suffering headaches in July 2004. See, e.g., AR 319, 330, 655. That Dr. Qazi did not begin treating her until 2011 does not alter the date upon which her issues began, even if it limits the period about which he can reasonably opine.

The ALJ also likely erred in discounting Dr. Qazi's opinion because his report "gives a history of viral meningitis," whereas the record does not establish a meningitis diagnosis. AR 17. Although the ALJ refers to the document noting Plaintiff's history of viral meningitis as Dr. Qazi's report, he appears to reference a treatment record reflecting a follow-up visit with Dr. Vee

and receipt of medical report from Dr. Qazi. AR 12; see AR 610-11. Indeed, Dr. Qazi's treatment notes do not reflect a history of meningitis but rather "prior significant abnormalities on MRI (diffuse meningeal enhancement)," meriting additional imaging. AR 447; see also AR 446, 448 (noting only gastritis in section for past medical history). It thus appears that this was not a well-taken basis for discounting Dr. Qazi's opinion.

The ALJ also noted "some credibility concerns" with respect to the November 2011 document. AR 17. Specifically, the November 2011 form was submitted by Plaintiff, rather than Dr. Qazi's office, and appears to contain the handwriting of at least two people. Id. Moreover, as the Commissioner notes (JS at 12), Dr. Qazi's name is misspelled on the form, an error unlikely to be made by him or his staff. AR 639. Although these are reasonable grounds to suspect that the document did not reflect Dr. Qazi's medical opinion, it is a close call whether the ALJ identified sufficient indicia of unreliability to dismiss the document as not credible.

The record contains other grounds to reject the opinions contained in the November 2011 form. The form is largely a check-off form, provides only brief, conclusory statements about Plaintiff's symptoms and limitations, and contains no support for the significant limitations indicated therein. See Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (holding that ALJ permissibly rejected "check-off reports that did not contain any explanation of the bases of their conclusions"); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (treating physicians' opinions properly rejected when conclusory, brief, and inconsistent with the record).

Moreover, nothing in the rather extensive treatment notes from Plaintiff's three appointments with Dr. Qazi suggests a finding of limitations as significant as those indicated on the form. Rather, Dr. Qazi found upon examination that Plaintiff was neurologically intact, sought prior records and

further testing, and attempted to treat her pain with medication. See AR 446-51. See Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (holding that doctor's opinion was properly rejected when treatment notes "provide no basis for the functional restrictions he opined should be imposed on [claimant]"); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (holding that ALJ permissibly rejected treating physician's opinion when opinion was inconsistent with treatment reports). Nor are such limitations consistent with Plaintiff's reliance on Tylenol alone for pain management and her reported activities. See AR 237-38 (Plaintiff stating that she is able to prepare meals, help her children, do chores, bathe, walk short distances, carry light items, and occasionally shop but does so slowly to accommodate fatigue and cranial pressure).

It is the ALJ's job to weigh opinion evidence. Lingenfelter, 504 F.3d at 1042 ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999) (noting that "questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]" (internal quotation marks omitted)). To the extent that the ALJ erred in assessing Dr. Qazi's opinion, because the ALJ cited other specific, legitimate reasons to discount Dr. Qazi's opinion, any error was harmless because the ALJ's ultimate credibility determination was unaffected. As is evident from the ALJ's recitation of the medical evidence, the weight of evidence from other doctors, including other neurology specialists and physicians who had treated Plaintiff for years, counseled against accepting the

outlier opinion expressed in the November 2011 form.[1] See Hamilton v. Comm'r Soc. Sec. Admin., 368 F. App'x 724, 726 (9th Cir. 2010) (holding that ALJ's failure to explicitly reject treating doctor's assertion of disability was harmless when ALJ's findings "contain[ed] numerous specific and legitimate reasons for rejecting a conclusion that [claimant] was disabled and could not work"); Morales v. Colvin, 534 F. App'x 589, 591 (9th Cir. 2013) (holding ALJ's error in rejecting opinion of treating medical source harmless where there existed other reasons to reject opinion).

Plaintiff's claim that the ALJ committed reversible error is accordingly rejected.

## V.

## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: August 26, 2014

DOUGLAS F. McCORMICK
United States Magistrate Judge

[1] For the same reason, the ALJ had no duty to further develop the record by contacting Dr. Qazi. See Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (ALJ's duty to further develop record triggered only when record contains ambiguous evidence or is inadequate to allow for proper evaluation of evidence); cf. Brinegar v. Astrue, 337 F. App'x 711, 712 (9th Cir. 2009).